Jeffrey S. Love, OSB No. 873987
Email: jeffrey.love@klarquist.com
Joseph T. Jakubek, OSB No. 950326
Email: joseph.jakubek@klarquist.com
Shelby Stepper, OSB No. 191851
Email: shelby.stepper@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
Telephone: 503-595-5300

*Attorneys for Plaintiffs*
*Daimler Truck North America LLC,*
*Thomas Built Buses, Inc., and*
*Detroit Diesel Corporation*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DAIMLER TRUCK NORTH AMERICA LLC, a Delaware limited liability company, THOMAS BUILT BUSES, INC., a North Carolina corporation, and DETROIT DIESEL CORPORATION, a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> B&E BROOKS, INC., d/b/a Branding Merchandise, an Oregon corporation, and ERIC J. BROOKS, an Oregon resident, <br><br> Defendants. | Case No.: 3:23-cv-01710 <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADEMARK COUNTERFEITING, UNFAIR COMPETITION, BREACH OF CONTRACT AND DECLARATORY RELIEF** |

Plaintiffs Daimler Truck North America LLC ("DTNA"), Detroit Diesel Corporation

("Detroit"), and Thomas Built Buses, Inc. ("Thomas Built Buses") allege as follows:

## PLAINTIFFS

1.      Plaintiff DTNA is a Delaware limited liability company that is authorized to do business in, and doing business in, the State of Oregon.  Its principal place of business is at 4555 N. Channel Drive, Portland, Oregon. DTNA is the leading commercial vehicle manufacturer in North America.

2.      Freightliner Trucks ("Freightliner") is a division of DTNA. Freightliner® is the best-selling brand of heavy-duty trucks in North America.

3.      Western Star® is a DTNA brand for heavy-duty trucks. Western Star Trucks Sales, Inc. ("Western Star") is a DTNA subsidiary, and a Washington corporation with its principal place of business at 4747 N. Channel Avenue, Portland, Oregon.

4.      Alliance® is a DTNA brand for parts and accessories for commercial trucks and buses. Alliance Parts ("Alliance Parts") is a division of DTNA. Alliance Parts offers new and remanufactured parts and accessories for nearly all makes of medium- and heavy-duty commercial trucks and buses. Alliance® products are available at more than 800 locations across North America, including Freightliner® dealers.

5.      Thomas Built Buses® is a leading brand of light and medium duty buses for schools, childcare centers, activity centers, transit applications and specialty markets. Plaintiff Thomas Built Buses is a DTNA subsidiary, and a North Carolina corporation with its principal office at 1408 Courtesy Road, High Point, North Carolina.

6.      Detroit® is a leading brand of truck parts. Detroit is a DTNA subsidiary, and a Delaware corporation with its principal place of business at 13400 W. Outer Drive, Detroit, Michigan. Detroit is the leading manufacturer of engines, axles and transmissions designed for Freightliner® and Western Star® trucks.

7.     For many years, Plaintiffs have sold, and authorized certain companies to sell, clothing, gift items and other personal products under the Freightliner®, Western Star®, Alliance®, Thomas Built Buses® and Detroit® brands. Defendant B&E Brooks, Inc. was one such authorized company, until its contract to sell such branded products was terminated by Plaintiffs effective December 19, 2021, pursuant to a termination notice sent on November 19, 2021. However, despite that termination, and despite repeated demands by DTNA that Defendants cease and desist further sales of products using Plaintiffs' brands, Defendants have continued to sell and offer for sale in Oregon and throughout the country clothing, gift items and other personal products using Plaintiffs' Freightliner®, Western Star®, Alliance®, Thomas Built Buses® and Detroit® trademarks and brands, thereby infringing Plaintiffs' trademarks. Defendants have promoted those sales using false advertising, including falsely advertising that their website is DTNA's website and Plaintiffs' brands are their brands. Plaintiffs bring this action to enjoin Defendants from any future infringement and/or counterfeiting of Plaintiffs' trademarks and false advertising, and for damages and other relief to remedy the harm caused by their trademark infringement and/or counterfeiting, false advertising, and breach of B&E Brooks' contractual obligations to stop using Plaintiffs' brands and trademarks after its contract was terminated and to not take actions intended to harm the brands it had been paid to promote.

**DEFENDANTS**

8.     Defendant B&E Brooks, Inc., doing business as "Branding Merchandise" and "Branding," (referred to herein as Defendant, "B&E Brooks," or "Branding Merchandise"), is an Oregon corporation that is authorized to do business in, and doing business in, the State of Oregon. Its principal place of business is at 28255 SE Wally Road, Boring, Oregon.

9.    Defendant Eric J. Brooks ("Eric Brooks") is an Oregon resident and the President, Secretary, and registered agent of Defendant B&E Brooks, Inc.  Defendant Eric Brooks has been the president of Defendant B&E Brooks, Inc. since at least May 21, 2007. On information and belief, Defendant Eric Brooks is an or the owner of Defendant B&E Brooks.

10.    Defendant Eric Brooks was personally aware of, responsible for, and intended the trademark infringement, false advertising, breach of contract and other misconduct alleged herein, and allowed that misconduct to continue despite being personally and repeatedly told by Plaintiff DTNA to stop it. Defendant Eric Brooks made no effort to stop the misconduct from December 19, 2021 through at least October 5, 2023, the date of the screenshots attached as Exhibit 7 hereto that show B&E Brooks' website still advertising goods for sale using Plaintiffs' trademarks and falsely stating it is "Daimler Trucks North America (DTNA) merchandise site!" Defendant Eric Brooks engaged in, and caused Defendant B&E Brooks, Inc. to engage in, the misconduct alleged herein for the purposes of profiting from Plaintiffs' trademarks and brands, harming Plaintiffs out of spite in retaliation for the termination of B&E Brooks' contract, and attempting to extract a financial windfall from Plaintiff DTNA. The misconduct alleged herein by Defendants was willful and malicious.

11.    Defendants are in the business of promoting customers' brands, including by selling apparel and other products with customers' brands in online and physical stores. Defendants have described their services on their website as including the operation of online company stores and retail stores that "sell merchandise to consumers" and employees, and "build brand loyalty," "empower[ing] your brand with our online company stores" by selling "custom branded merchandise" that "meets quality standards." Defendants acknowledge on their website the importance of customers' ownership of their brands, stating: "We understand that your brand is

the most important asset your company owns." Excerpts of Defendants' website with those service descriptions and acknowledgement are set forth below, from webpages captured 3/15/2022 at the following URLs:

- http://shop.brandingmerchandise.com/about.htm;

- http://brandingmerchandise.com/digital-company-stores/

- http://brandingmerchandise.com/branded-products-apparel/





### Ready to learn how our Digital Company Stores can work for your business?

[ SCHEDULE MEETING ]

## Features & Benefits

| FEATURES | BENEFITS |
| --- | --- |
| *Branded Merchandise* | *Select from over 800,000 products to add to your store or work with our special-order department to create something unique.* |
| *Custom Branded* | *Allows for the look and feel of the site to align with your company brand.* |

*Branding Merchandise staff ensures that all of your orders are produced in accordance with all government regulations, meets quality standards, delivery timeline and we will (we do it all the time) travel to the factories for inspections and to re-work the line when needed.*

12.     Nowhere on Defendants' website do Defendants state that their business includes attempting to misappropriate customers' brands, or to use customers' brands without permission.

13.     Nowhere in any written materials provided by Defendants to Plaintiffs, while they were doing business together prior to Plaintiffs' November 19, 2021, notice to Defendants terminating their relationship, did Defendants state that they intended to misappropriate Plaintiffs' brands, or use Plaintiffs' brands without Plaintiffs' permission.

14.     Defendants never told Plaintiffs orally, while they were doing business together prior to Plaintiffs' November 19, 2021 termination notice, that they intended to misappropriate Plaintiffs' brands, or use Plaintiffs' brands without Plaintiffs' permission.

15.     Plaintiffs never agreed that Defendants could misappropriate Plaintiffs' brands, or use Plaintiffs' brands without Plaintiffs' permission.

## EXHIBITS

16.     True copies of the following documents are attached as exhibits hereto:

- Ex. 1 – November 19, 2021 termination email from DTNA to Defendants.

- Ex. 2 –December 2021 email correspondence between DTNA and Defendants regarding the termination, return of DTNA's inventory, and closing down Defendants' website selling DTNA branded goods.

- Ex. 3 – January 2022 cease and desist letter from DTNA to Defendants, telling them to stop using DTNA's trademarks and brands.

- Ex. 4 – February 2022 cease and desist letter from DTNA to Defendants, telling them to stop using DTNA's trademarks and brands.

- Ex. 5 – March 2022 letter from DTNA to Defendants, regarding the termination, return of inventory, and reminding them to cease and desist from using DTNA's trademarks.

- Ex. 6 – October 2023 cease and desist letter from DTNA to Defendants, telling them to stop using DTNA's trademarks, and requesting return of DTNA inventory.

- Ex. 7 – October 2023 screenshots of Defendants' website using without authorization Plaintiffs' trademarks and falsely advertising that the site is DTNA's site.

- Ex. 8 – November 2023 screenshot of Defendants facebook page for DTNA branded goods.

- Ex. 9 – True copies of federal trademark registrations for the Freightliner®, Western Star®, and Detroit logos® registered trademarks alleged herein that expressly cover use of those marks on clothing.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction over the subject matter of this action because this action arises under the Federal Trademark Act, 15 U.S.C. §§ 1051-1127, and the Federal Declaratory Judgment Act, 28 U.S. Code § 2201.  Jurisdiction arises under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  Supplemental jurisdiction over the causes of action under state law is proper as those causes of action are substantially related to the causes of action over which the Court has original jurisdiction, pursuant to 28 U.S.C. §§ 1338(b) and 1367.

18.    Venue is proper under 28 U.S.C. §§ 1391(b).  Defendants reside in this judicial district. Defendant B&E Brooks maintains its principal place of business in this District. Defendants are subject to the court's personal jurisdiction with respect to this action. Defendants are transacting business within this judicial district and have committed acts complained of in this judicial district.  Defendants' infringing acts have been aimed at and felt within this district.

**TERMINATION OF THE PARTIES' BUSINESS RELATIONSHIP IN 2021**

19.     Plaintiffs had a business relationship with Defendant B&E Brooks that was terminated effective on December 19, 2021.

20.     On November 19, 2021, DTNA emailed Defendant B&E Brook's president, Eric Brooks, terminating the business relationship between Defendant B&E Brooks and DTNA and its brands, including, but not limited to, Freightliner, Western Star, Thomas Built Buses, Detroit, Alliance Parts, and Detroit Reman, and telling Defendants to vacate the Gear Box store by December 19, 2021, and "sunset" their website on which they sell DTNA branded goods by December 13, 2021. The email, a true copy of which is attached as Exhibit 1 hereto, stated:

**From:** Richter, Gretchen (164) [DT] <gretchen.richter@daimler.com>
**Sent:** Friday, November 19, 2021 7:00 AM
**To:** Eric Brooks <ericb@brandingmerchandise.com>
**Cc:** Taylor, Nicole (164) [DT] <nicole.taylor@daimler.com>; Mullinix, Madalyne (164) [DT] <madalyne.mullinix@daimler.com>; Mitchell, April (164) [DT] <april.mitchell@daimler.com>; Gusko, Greg (164) [DT] <greg.gusko@daimler.com>; Farrar, Simone (605) [DT] <simone.farrar@daimler.com>; Marsh, Jennifer (164) [DT] <jennifer.marsh@daimler.com>
**Subject:** Contract Termination

Dear Eric,

Daimler Trucks North America LLC ("DTNA") and its brands, including but not limited to, Freightliner, Western Star, Thomas Built Buses, Detroit, Alliance Parts, and Detroit Reman (collectively, the "Brands") inform you that we will no longer require the services of Branding Merchandise, as of December 19, 2021. The SOWs included in this termination include the Daimler Merchandise Program SOW dated July 1, 2019 to June 31, 2024 and Alliance Parts SOW dated December 1, 2019 to November 30, 2020.

Effective immediately, DTNA and the Brands will not place any additional orders with Branding Merchandise and Branding Merchandise does not have DTNA or the Brands' authority to purchase additional inventory

DTNA and the Brands request that Branding Merchandise hand any keys for the Gear Box store to the front desk at DTNA headquarters in Portland and vacate the premises before end of business day on December 19, 2021. DTNA and the Brands also expect that Branding Merchandise will work with the DTNA internal stakeholders to sunset the www.shopDTNA.com site and transfer any domain name and site ownership to DTNA on or before December 13, 2021.

If you have any questions, you can reach me at 503-250-0191 or gretchen.richter@daimler.com, or contact the relevant brand manager, as listed below.


Gretchen Richter – DTNA
Nicole Taylor – Freightliner
Madalyne Mullinix – Western Star
April Mitchell – Alliance Parts and Detroit Reman
Greg Gusko – Detroit
Simone Farrar – Thomas Built Buses

At that time, the URL www.shopDTNA.com redirected users to Defendants' website for selling DTNA branded goods at https://daimlertrucksna.brandingmerchandise.com.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND COUNTERFEITING, UNFAIR COMPETITION, BREACH OF CONTRACT AND DECLARATORY RELIEF     9

21.     In December 2021, DTNA and Eric Brooks exchanged emails regarding B&E Brooks' return of DTNA's branded inventory and closing of the website B&E Brooks used to sell that inventory. A true copy of one of those email strings, with an invoice that Defendants attached to one of those emails, is attached hereto as Exhibit 2. In sum, DTNA told B&E Brooks to: provide a detailed invoice listing the branded inventory and return it, and DTNA would pay him for it; provide a detailed invoice listing his Gear Box services, and they would pay him for those services; and either transfer his website for selling DTNA branded goods or close it down. B&E Brooks admitted that he had DTNA branded inventory, admitted that it was DTNA's inventory (calling it "your inventory"), and sent DTNA an invoice for $75,000 for that inventory and $15,000 per year for three years for Gear Box services, but refused to provide the detailed invoices DTNA requested, failed to deliver the inventory to DTNA for inspection and acceptance, and refused to transfer or close down his website selling DTNA branded goods. Below is a true copy of some of that email correspondence, starting with DTNA's request for a detailed inventory invoice, details on delivery of the inventory, and transfer of the website, and B&E Brooks sending an invoice with no detail, no proposal to deliver the inventory, and no proposal to transfer or close his website offering DTNA branded goods:

**From:** Eric B <ericb@brandingmerchandise.com>
**Sent:** Monday, December 13, 2021 10:57 AM
**To:** Richter, Gretchen (164) [DT] <gretchen.richter@daimler.com>
**Cc:** Eric B <ericb@brandingmerchandise.com>
**Subject:** Invoice per SOW
**Importance:** High

Good morning Gretchen,

Please find attached an invoice per the SOW.

Thank you,

Eric



Eric Brooks
*Your Relationship Partner*
**Branding Merchandise**
d:  503-663-2858 x221
m: 503-680-0901
a:  28255 SE Wally Road, Boring OR, 97009
w:  www.brandingmerchandise.com    e:  EricB@brandingmerchandise.com



Shop BrandingMerchandise.com
*The biggest compliment we can receive is a referral.*
*Please refer us to your family, friends and colleagues!*

**From:** gretchen.richter@daimlertruck.com <gretchen.richter@daimlertruck.com>
**Sent:** Monday, December 6, 2021 9:30 AM
**To:** Eric B <ericb@brandingmerchandise.com>
**Subject:** RE: Wrap up

Eric,

I'm sure you and your team are on top of it, but wanted to clarify our requests on the items we discussed on Wednesday.

1)  *Inventory*: Please send a detailed listing of items broken out by brand.  This should include the number of units of each item as well as the price per unit and total due.  I understand Alliance is under a different contract and will not be represented in this document.  We also need to work out how and where the inventory will be delivered.
2)  *Gearbox*:  Let me know where I can find the keys.  I'd like to get into the space and see what's available to work with.
3)  *ShopDTNA*: We are interested in the purchasing the ShopDTNA.com URL address only and do not need the back end platform.  The pricing proposal should reflect this.  If we are unable to purchase the URL, we will work with your team and create a re-direct to the new website.

It would be great to get everything settled before the holidays.  Can you give me an ETA on when I will see the proposals?

Thanks so much,
Gretchen

In response, DTNA asked for supporting documentation for the invoice. B&E Brooks asked for a call to discuss that:

**From:** Eric B <ericb@brandingmerchandise.com>
**Sent:** Monday, December 13, 2021 11:35 AM
**To:** Richter, Gretchen (164) [DT] <gretchen.richter@daimler.com>
**Cc:** Eric B <ericb@brandingmerchandise.com>
**Subject:** RE: Invoice per SOW

Hello Gretchen,

When would you have time to speak about your below request?

Thank you,

Eric



Eric Brooks
*Your Relationship Partner*
**Branding Merchandise**
d:  503-663-2858 x221
m: 503-680-0901
a:  28255 SE Wally Road, Boring OR, 97009
w:  www.brandingmerchandise.com   e: EricB@brandingmerchandise.com

 

Shop.BrandingMerchandise.com
*The biggest compliment we can receive is a referral.*
*Please refer us to your family, friends and colleagues!*

**From:** gretchen.richter@daimlertruck.com <gretchen.richter@daimlertruck.com>
**Sent:** Monday, December 13, 2021 11:06 AM
**To:** Eric B <ericb@brandingmerchandise.com>
**Subject:** RE: Invoice per SOW

Hi Eric,

Do you have the supporting documentation for this invoice?

Thanks!
Gretchen

Thereafter, DTNA continued to request a list of the inventory to be returned to DTNA, a Gear Box invoice detailing the services actually provided, and transfer or closure of B&E Brooks' website selling DTNA branded goods.  B&E Brooks failed and refused to do that, and instead threatened to charge storage fees for DTNA's inventory that B&E Brooks was obligated to deliver to DTNA.

**From:** gretchen.richter@daimlertruck.com <gretchen.richter@daimlertruck.com>
**Sent:** Monday, December 20, 2021 9:59 AM
**To:** Eric B <ericb@brandingmerchandise.com>; Kelshe Shaffer <kelshe.shaffer@brandingmerchandise.com>
**Cc:** troy.fuhrer@daimlertruck.com; andrew.w.johnson@daimlertruck.com; jennifer.marsh@daimlertruck.com; april.mitchell@daimlertruck.com
**Subject:** RE: Invoice per SOW

Hi Eric,

Though I haven't heard back, I am hopeful that we can have a conversation about the information needed to pay the invoice(s) from B&E Brooks.  I'll set up a meeting for early January so we can discuss concerns related to providing an accounting of work done and inventory on hand.

Best,
Gretchen

**From:** Richter, Gretchen (164) [DT]
**Sent:** Wednesday, December 15, 2021 2:59 PM
**To:** 'Eric B' <ericb@brandingmerchandise.com>; Kelshe Shaffer <kelshe.shaffer@brandingmerchandise.com>
**Cc:** Fuhrer, Troy (164) [DT] <troy.fuhrer@daimler.com>; Johnson, Andrew (164) [DT] <andrew.johnson@daimler.com>; Marsh, Jennifer (164) [DT] <jennifer.marsh@daimler.com>; Mitchell, April (164) [DT] <april.mitchell@daimler.com>
**Subject:** RE: Invoice per SOW

Eric,

I'm answering on behalf of both Alliance and DTNA as April is currently out of the office.

Rest assured, DTNA fully intends to honor its contractual obligations and will, of course, reimburse B&E Brooks for inventory and work performed.  However, our mutually-agreed upon SOW requires that all invoices be sufficiently detailed to reflect the relevant goods and services.  We need you to provide this accounting before we are able to pay the invoice you've submitted.

With the upcoming holidays and associated out of office time, I suggest we hit "pause" on this discussion and pick it up in the New Year when we talk through both of our concerns.  If you're in agreement, I'll set up a meeting for the first week of January.

We look forward to discussing further.

Sincerely,

Gretchen

**From:** Eric B <ericb@brandingmerchandise.com>
**Sent:** Wednesday, December 15, 2021 12:48 PM
**To:** Richter, Gretchen (164) [DT] <gretchen.richter@daimler.com>; Eric B <ericb@brandingmerchandise.com>; Kelshe Shaffer <kelshe.shaffer@brandingmerchandise.com>
**Cc:** Fuhrer, Troy (164) [DT] <troy.fuhrer@daimler.com>; Johnson, Andrew (164) [DT] <andrew.johnson@daimler.com>; Marsh, Jennifer (164) [DT] <jennifer.marsh@daimler.com>
**Subject:** RE: Invoice per SOW
**Importance:** High

Hello Gretchen, Happy Holidays, and thank you for your email.

As you know, I just responded to a similar email (from April Mitchell at Alliance Parts)  and will respond likewise.

We have worked with each other for many years now, and I find it unfortunate that you and DTNA are taking this position.  Branding Merchandise definitely believes that DTNA's analysis is incorrect; we have history, past and present performance, and standing, among other aspects.

The invoices have a "Credit Term" of "Due Upon Receipt."  I will allow a payment term of 15 days from the invoice date.  After this date, we will proceed with our normal collection processes.  If the invoices become delinquent and your inventory is still within our facility, we will charge a storage fee of $7.50 per cubic foot per 15 days.  The storage charge will escalate, at any time, according to any price increases Branding Merchandise deems appropriate.  Any late invoices will accrue an interest rate of 2% per month. 

Again, it has been a pleasure to serve you over the past years, and we, I, wish you all a very Merry Christmas, New Year, Holidays, and much success personally and professionally in the future.

Eric



Eric Brooks
*Your Relationship Partner*
**Branding Merchandise**
d:  503-663-2858 x221
m:  503-680-0901
a:  28255 SE Wally Road, Boring OR, 97009
w:  www.brandingmerchandise.com    e:  EricB@brandingmerchandise.com

 

Shop.BrandingMerchandise.com
*The biggest compliment we can receive is a referral.*
*Please refer us to your family, friends and colleagues!*



22.    On January 19, 2022, DTNA sent Defendants a letter, attached as Exhibit 3 hereto, again stating that Defendants' contracts with DTNA were terminated in 2021 and demanding that Defendants immediately cease and desist from all use of the Freightliner®, Western Star®, Alliance® and other related marks and logos on Defendant's website, SHOP DTNA HOME PAGE – Shop DTNA (brandingmerchandise.com).  The body of that letter states as follows:

**Via E-mail To:** ericb@brandingmerchandise.com

**Re:    Cease and Desist - Unauthorized Use of Freightliner® and other DTNA owned trademarks**

Dear Eric:

I am Associate General Counsel for Daimler Truck North America LLC ("DTNA"). DTNA is the owner of Freightliner®, Western Star®, Alliance® and other related marks and logos (collectively, the "Mark(s)") and has secured United States Federal Trademark Registration(s) to protect the Marks.

As you are well aware, B&E Brooks Inc. DBA Branding Merchandise ("Branding") contracts with DTNA, including its limited license to use the Marks, were terminated, effective December 19, 2021. However, I recently learned that Branding is continuing to market, sell, distribute and identify its merchandise using the Marks on its website: SHOP DTNA HOME PAGE – Shop DTNA (brandingmerchandise.com). Such use of DTNA's federally registered Marks infringes DTNA's rights to the Marks, and DTNA demands that you immediately cease and desist all such use.

DTNA's trademarks, including but not limited to, the Marks are well known, and your current use of the Marks is likely to lead consumers to mistakenly believe that your products originate not from you, but from DTNA.

Please respond in writing by January 26, 2021 to confirm that you have ceased and will desist from using the Marks in any manner whatsoever.

Although we are hopeful that this matter will be resolved without legal action, DTNA reserves all rights in this matter.

23.    On February 11, 2022, DTNA's outside counsel sent Defendants a letter, attached as Exhibit 4 hereto, again stating that DTNA "insists that Branding stop use immediately" of Plaintiff's trademarks including its "Freightliner®, Western Star®, Alliance® and other related marks and logos." The first paragraph of that letter states as follows:

February 11, 2022

Via Email Only To: ericb@brandingmerchandise.com

Re:    Unauthorized Use of Freightliner® and other DTNA owned trademarks

Dear Eric:

Following up on Ms. Marsh's letter of January 19, 2022, and our call last Friday, please understand that Branding Merchandise ("Branding") is not authorized to use any of Daimler Truck North America LLC's ("DTNA") trademarks (which includes Freightliner®, Western Star®, Alliance® and other related marks and logos (collectively, the "Mark(s)"). DTNA insists that Branding stop use immediately. Please confirm that Branding has done so by end of business on Friday, February 18, 2022.

On March 22, 2022, DTNA's counsel again sent Defendants a letter, attached as Exhibit 5 hereto, reminding them that their business relationship with DTNA has been terminated, and that DTNA requests that they cease and desist all use of DTNA's and its affiliates' trademarks, and again requesting return of DTNA's branded inventory.

## **THE PARTIES' DISPUTE**

24.     Despite Plaintiffs termination of their business relationship with Defendant B&E Brooks in 2021, and insistence that Defendants "sunset" their online store for selling products with Plaintiffs' brands, and repeated demand that Defendants cease and desist from all use of Plaintiffs' trademarks, Defendants continued to operate on their website through at least October 5, 2023 (the website screenshots attached as Exhibit 7 were taken October 4 and 5, 2023) an online store that falsely purported to be DTNA's authorized online store, that used Plaintiffs' registered trademarks without authorization, and that offered for sale and sold products branded with Plaintiffs' registered trademarks and common law trademarks and brand names without authorization.

25.     Defendants refused to stop using Plaintiffs' trademarks and brand names on its website, and on products offered for sale and sold on its website, through at least October 5, 2023.

26.     Defendants continued to operate its online store through at least October 5, 2023, giving the appearance that it was authorized by Plaintiffs, when it was not.

27.     On October 20, 2023, counsel for DTNA sent counsel for B&E Brooks the following proposal by DTNA to pay B&E Brooks' invoice for $75,000 for DTNA inventory within 30 days of receipt of DTNA branded inventory of that value, and to pay B&E Brooks' separate invoice for $53,408.75 for Alliance (a DTNA brand) inventory within 30 days of receipt of the Alliance branded items that B&E Brooks listed as in his possession, and to pay a reasonable fee for Gear Box staffing within 30 days of receipt of an invoice detailing the services actually

performed.  DTNA also again demanded that Defendants immediately take down their websites

selling DTNA branded goods, and stop all use of the brands and trademarks of DTNA and its

affiliates, and stop all false statements relating to DTNA, and agree in writing to not engage in

such misconduct again. Defendants did not accept any part of that proposal.  The following is a

true copy of that proposal, which is also attached hereto as Exhibit 6:

**Klarquist**

One World Trade Center
121 SW Salmon Street, Suite 1600
Portland, Oregon 97204 USA

**Jeffrey S. Love**
Attorney
503-595-5300
jeffrey.love@klarquist.com

October 20, 2023

VIA EMAIL

Tab Wood
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205
Email: twood@sussmanshank.com

Re:    Daimler Truck North America LLC/B&E Brooks, Inc.

Dear Tab:

Your client B&E Brooks, Inc. ("Brooks"), dba "Branding Merchandise," still has inventory marked with trademarks and brands owned by our clients Daimler Truck North America LLC and its affiliates ("DTNA"). Brooks still has not taken down Brooks' website offering inventory for sale and falsely stating it is the "Daimler Trucks North America (DTNA) merchandise site!" ("SHOP DTNA HOME PAGE – Shop DTNA (brandingmerchandise.com)"). DTNA wishes to resolve this dispute and repeatedly tried to do so. Its patience is at an end.

DTNA offers the following for the inventory, if delivered to DTNA within 14 days of the date of this letter (to this address: Daimler Truck North America, 4555 N. Channel Avenue, Portland, Oregon 97217), with three days advance notice by email to me of the date and time of delivery. Brooks' invoice no. 128226 asks for $75,000 for "Branded & Co-Branded Merchandise." DTNA will pay the fair value of that inventory up to a maximum of $75,000, within 30 days of receipt. Brooks' invoice no. 128160 asks for payment of $53,408.75 for "Alliance Branded Inventory as listed in Exhibit B-1." DTNA will pay $53,408.75 for the inventory listed in Exhibit B-1, within 30 days of receipt. If less is delivered, then DTNA will pay its fair value up to $53,408.75.

DTNA offers the following for Gear Box staffing. Brooks' invoice no. 128226 asks for $15,000 for each of 2019, 2020, and 2021 for "Management and Staffing of DTNA Gift Store Gear Box." However, $15,000 is the maximum value of a full year of full-time services. The contract began July 1, 2019, and the store was closed due to COVID-19 for most of 2020 and 2021, so those were all partial years. DTNA will pay a reasonable fee for actual services provided within 30 days of receipt of an invoice detailing the dates and types of Gear Box services provided. The invoice must be accurate, verified by Eric Brooks, and emailed to me within 14 days of the date of this letter. The fee will be proportional to $15,000 for a full year of full-time services (e.g., $1,250 for one month of full-time services).

| KLARQUIST SPARKMAN, LLP Intellectual Property Law | Oregon | Nevada | California | klarquist.com |

**Klarquist**

Tab Wood
October 20, 2023
Page 2

DTNA will send you soon (probably by next week) a check for $22,500 payable to Brooks. This should more than cover a reasonable fee for Brooks' actual Gear Box services, plus shipping charges for the Alliance and DTNA inventory, plus consideration for the agreement below (if signed and returned). The excess shall be applied to offset any other amounts found to be owed.

Please email us a current Form W-9 for B&E Brooks, Inc. All payments are conditioned upon receiving a current Form W-9 10 days in advance of payment.

Finally, DTNA again demands that Brooks and Eric Brooks immediately take down the websites at https://daimlertrucksna.brandingmerchandise.com/ and www.shopDTNA.com, stop all use of the brands and trademarks of DTNA and its affiliates, including offers and sales of products marked with those brands and trademarks, and stop all false or potentially misleading representations related to DTNA, and agree, by signing below and returning an executed copy to us, to not engage in such misconduct again. If this is not done within seven days of the date of this letter, then DTNA intends to file suit against Brooks and Eric Brooks to have the website taken down, for damages for trademark infringement including willful use of counterfeit marks, and to resolve any remaining disputes.

Sincerely,

KLARQUIST SPARKMAN, LLP

*Jeffrey S. Love*

Jeffrey S. Love

### AGREEMENT

B&E Brooks, Inc. and Eric Brooks agree to immediately take down the websites at https://daimlertrucksna.brandingmerchandise.com/ and www.shopDTNA.com, stop all use of the brands and trademarks of DTNA and its affiliates, including offers and sales of products marked with those brands and trademarks, and stop all false or potentially misleading representations related to DTNA, and to not engage in such conduct again directly or through any company substantially owned or controlled by B&E Brooks, Inc. or Eric Brooks.

Date: October _____, 2023

_____
Eric Brooks, personally and as President of B&E Brooks, Inc.

JSL:srf

| **KLARQUIST SPARKMAN, LLP** Intellectual Property Law | Oregon | Nevada | California | klarquist.com |
|---|---|---|---|---|

28.    DTNA sent B&E Brooks' counsel, within a week of the date of that proposal, the check for $22,500 described in that proposal.

29.     B&E Brooks and Eric Brooks did not deliver any inventory as requested, and did not sign and return as requested the Agreement to stop all use of DTNA's trademarks and brands and all false representations related to DTNA.

30.     On or about October 23, 2023, B&E Brooks made some changes to the first page of its website at daimlertrucksna.brandingmerchandise.com, but the product pages remained on that site, through which B&E Brooks still offered for sale clothing and other products branded using Plaintiffs' trademarks. On or about October 25, 2023, B&E Brooks changed the URL to dlremp.brandingmerchandise.com for its website, but it still offered Plaintiffs' branded goods for sale, the infringing use of Plaintiffs' trademarks remained. On or about November 2, 2023, B&E Brooks made further changes to the home page of his website, but it still offered Plaintiffs' trademarked goods for sale, Defendants continued to use and infringe Plaintiffs' trademarks. As of November 16, 2023, the Defendants' website URLs at dlremp.brandingmerchandise.com and daimlertrucksna@brandingmerchandise.com are "down," and their site at www.shopdtna.com redirects to this website of Defendants designed to capture customer looking for DTNA branded goods:



In addition, Defendants still maintain facebook pages, such as those copied below, and the page attached hereto as Exhibit 8, that use Plaintiffs' trademarks and brand names without authorization, and are designed to capture customers looking for goods branded with Plaintiffs' trademarks through their obtain referrals through their invitations for people to email Defendants and set up an account with Defendant.

The Gear Box by Branding | Facebook https://www.facebook.com/daimlergearbox/about



https://da-dk.facebook.com/daimlergearbox/



31.     Defendants have refused Plaintiff DTNA's repeated requests that they deliver to DTNA the inventory they had on hand when Plaintiff's relationship with Defendant B&E Brooks was terminated on November 19, 2021, along with an itemized list of the inventory, so DTNA can inspect it, take possession of it and pay Defendant B&E Brooks for it in accordance with the parties' agreements and standard commercial practice, including the parties' agreed limits on authorized inventory and requirement that Defendant B&E Brooks provide detailed invoices itemizing such inventory as of November 2021. Defendants have failed and refused to deliver that inventory to Plaintiff DTNA. Instead, Defendants have kept that inventory and continued to offer it for sale on their website, which they falsely represent as a DTNA website.

32.     On information and belief, Defendants have also ordered new clothing and other products marked with Plaintiffs' trademarks and brands since December 2021.  That is contrary to their contractual obligations, obligations under trademark law, and DTNA's request that they order no new products that use Plaintiffs' trademarks and brands.

33.     Plaintiff DTNA seeks a declaration resolving these disputes, and other disputes that Defendant B&E Brooks has raised regarding amounts Defendant B&E Brooks contends it is owed, and DTNA denies are owed, as a result of Plaintiff DTNA's termination of their business relationship.

## PLAINTIFFS' REGISTERED AND COMMON LAW TRADEMARKS

34.     Plaintiff DTNA owns the following registered trademarks at issue in this case:

| MARK | REG. NO. & DATE | GOODS AND SERVICES |
|------|------|------|
| FREIGHTLINER | 0583277 12/8/1953 | IC 012: Truck trailers and motor trucks. FIRST USE: 19410110. FIRST USE IN COMMERCE: 19410110 |

| FREIGHTLINER | 0823602 2/7/1967 | IC 012: motor trucks and truck tractors. FIRST USE: 19410110. FIRST USE IN COMMERCE: 19410110 |
|---|---|---|
| FREIGHTLINER | 1073332 9/13/1977 | C 037: truck repairing and servicing. FIRST USE: 19470000. FIRST USE IN COMMERCE: 19470000 |
| FREIGHTLINER | 1165403 8/18/1981 | IC 011: Flashlights. FIRST USE: 19760601. FIRST USE IN COMMERCE: 19760601

IC 014: Articles of Jewelry Namely, Clocks. FIRST USE: 19760601. FIRST USE IN COMMERCE: 19760601

IC 016: Pens. FIRST USE: 19760601. FIRST USE IN COMMERCE: 19760601

IC 025: Clothing-Namely, Hats, Gloves, Jackets, Shirts, T-Shirts. FIRST USE: 19760601. FIRST USE IN COMMERCE: 19760601 |
| WESTERN STAR | 1097365 7/25/1978 | IC 012: highway trucks and tractors and structural parts therefor. FIRST USE: 19770318. FIRST USE IN COMMERCE: 19770321 |
| WESTERN STAR | 3632403 6/2/2009 | IC 025: clothing, namely, T-shirts, shirts, jackets, hats. FIRST USE: 19991231. FIRST USE IN COMMERCE: 19991231 |
| WESTERN STAR | 3988372 7/5/2011 | IC 012: Land vehicles. FIRST USE: 19831231. FIRST USE IN COMMERCE: 19831231

IC 035: Retail store services featuring land vehicle parts; dealerships in the field of trucks. FIRST USE: 19831231. FIRST USE IN COMMERCE: 19831231

IC 037: Land vehicle repair and maintenance services, namely, truck repair and maintenance service performed by truck dealers in a |

| | | |
|---|---|---|
| | | dealership network. FIRST USE: 19831231. FIRST USE IN COMMERCE: 19831231 |
|  | 1124708<br><br>9/4/1979 | IC 012: Highway trucks and tractors, glider kits and structural parts therefor. FIRST USE: 19720508. FIRST USE IN COMMERCE: 19720508 |
|  | 3566258<br><br>1/27/2009 | IC 007: Alternators for land vehicles, starter motors for land vehicles, belts for motors and for engines for land vehicles, filter kits consisting primarily of oil filters, fuel filters and air filters for land vehicle engines; fuel-water separators for the cleaning and purification of fuel; fans and fan blades for automotive engines; vehicle heater and air conditioning component parts, namely, blower motors, blower wheels, clutches, compressors, fan blades, driers; air conditioning refrigerant hoses for vehicles; air cleaner shields in the nature of air cleaner covers, vehicle throttle sticks. FIRST USE: 19980800. FIRST USE IN COMMERCE: 19980800 |
|  | 3924410<br><br>3/1/2011 | IC 001: Antifreeze and coolant for vehicles. FIRST USE: 19980800. FIRST USE IN COMMERCE: 19980800<br><br>IC 006: [Metal appliques in the nature of decorative designs or logos of metal plate for use on vehicle mud flaps; ]vehicle heater and air conditioning component parts, namely, metal hose fittings for vehicles; metal gaskets for vehicles; metal muffler clamps; and metal mounting brackets for vehicles. FIRST USE: 19980800. FIRST USE IN |

| | | |
|---|---|---|
| | | COMMERCE: 19980800<br><br>IC 009: Batteries; vehicle heater and air conditioning component parts, namely, pressure switches, relays, resistors, electrical switches and thermostatic switches. FIRST USE: 19980800. FIRST USE IN COMMERCE: 19980800<br><br>IC 011: Fans, namely, electric fans for vehicle interior environment control; air conditioners for vehicles; vehicle heater and vehicle air conditioning component parts, namely, valves for gases and liquid, condenser and evaporator coils; vehicle heater cores; lights for vehicles; headlights for vehicles; anti-glare lights for vehicles, lenses and lamp bulbs for vehicle bumper guides. FIRST USE: 19980800. FIRST USE IN COMMERCE: 19980800<br><br>IC 012: Quarter fenders, quarter fender mounting bars, quarter fender plugs, license plate frames and license plate holders, permit and license holders for attachment to vehicles, bumper guides, clamps for bumper guides, vehicle horn covers, land vehicle parts, namely, visors for land vehicles, dashboard parts, namely, air diffusers louvers for directing air inside a vehicle passenger cabin; brake chambers for land vehicles; control knobs for setting vehicle heating and air conditioning. FIRST USE: 19980800. FIRST USE IN COMMERCE: 19980800 |
|  | 2366721<br><br>7/11/2000 | IC 035: distributorship services in the field of motor vehicle parts. FIRST USE: 20000100. FIRST USE IN COMMERCE: 20000100 |

| | | |
|---|---|---|
|  | 2908884<br><br>12/7/2004 | IC 001: Antifreeze, coolant for vehicles. FIRST USE: 19980800. FIRST USE IN COMMERCE: 19980800<br><br>IC 006: Metal appliques for use *on* vehicles mud flaps and other vehicle components. FIRST USE: 19980800. FIRST USE IN COMMERCE: 19980800<br><br>IC 007: Alternators for land vehicles, starter motors for land vehicles, belts for motors and for engines for land vehicles, filter kits consisting primarily of oil filters, fuel filters and air filters for land vehicle engines. FIRST USE: 19980800. FIRST USE IN COMMERCE: 19980800<br><br>IC 009: Batteries. FIRST USE: 19980800. FIRST USE IN COMMERCE: 19980800<br><br>IC 011: Fans; air conditioners for vehicles, vehicle heaters and air conditioning component parts, namely, blower motors, blower wheels, clutches, compressors, fittings, valves for gases and liquid, condenser and evaporator coils, fan blades*,* air conditioning and refrigerant hoses; gaskets, heater cores, control knobs, air diffusers and louvers, pressure switches, driers, relays, resistors, electrical switches and thermostatic switches, fuel-water separators for the cleaning and purification of fuel; lights for vehicles, headlights for vehicles and antiglare lights for vehicles; lenses and lamp bulbs for vehicle bumper guides. FIRST USE: 20020715. FIRST USE IN COMMERCE: 20020715<br><br>IC 012: Vehicle tire and wheel accessories, namely, bolt and lug nut caps; reflective lug nut covers; hub caps; axle and wheel covers and rings; wheel simulators and wheel covers for [vehicle] *vehicles*; land vehicle parts, namely, |

| | | mud flap holders, anti-sail brackets for mud flaps, top and bottom fender plates, quarter fenders, quarter fender mounting bars, quarter fender plugs, splash guards, license plate frames and license plate holders, permit and license holders for attachment to vehicles, bumper guides, clamps for bumper guides, vehicle horn covers, rain caps for vehicle exhaust pipes*,* rock, lens and fog guards for vehicle lights; land vehicle parts, namely, visors for land vehicles, headlight shields; remanufactured diesel engines, muffler clamps, air cleaner shields, mounting brackets for vehicles, throttle sticks, window vent locks, brake chambers for land vehicles and pneumatic hoses for land vehicles. FIRST USE: 19980800. FIRST USE IN COMMERCE: 19980800 |
|---|---|---|

35.     Plaintiff Thomas Built Buses owns the following registered trademarks at issue in this

case:

| MARK | REG. NO. & DATE | GOODS AND SERVICES |
|---|---|---|
| THOMAS BUILT BUSES | 2639722<br><br>10/22/2002 | IC 012: Buses and bus bodies. FIRST USE: 19720000. FIRST USE IN COMMERCE: 19720000 |
| **Thomas** BUILT BUSES | 2654503<br><br>11/26/2002 | IC 012: Buses and bus bodies. FIRST USE: 19720000. FIRST USE IN COMMERCE: 19720000 |

36.     Plaintiff Detroit owns the following registered trademarks at issue in this case:

| MARK | REG. NO. & DATE | GOODS AND SERVICES |
|---|---|---|
| DETROIT DIESEL | 1255257<br><br>10/25/1983 | IC 012: Diesel Engines for Trucks and Buses. FIRST USE: 19370000. USED IN ANOTHER FORM in a different form Jul. 1972. FIRST USE |

| | | IN COMMERCE: 19370000 |
|---|---|---|
|  | 1761009<br><br>3/30/1993 | IC 007: diesel engines for construction, lumbering, mining, drilling, marine and industrial applications. FIRST USE: 19880100. USED IN ANOTHER FORM First used in commerce in another form in 1937. FIRST USE IN COMMERCE: 19880100 |
|  | 2036500<br><br>2/11/1997 | IC 009: electronic controls for monitoring and controlling the operation of diesel engines. FIRST USE: 19930921. FIRST USE IN COMMERCE: 19930921 |
|  | 1610393<br><br>8/21/1990 | IC 007. US 013 019 021 023 031 034 035. G & S: diesel engines for construction, lumbering, mining, drilling, [ marine ] and industrial applications. FIRST USE: 19720000. FIRST USE IN COMMERCE: 19720000 |
|  | 1619750<br><br>10/30/1990 | IC 012: diesel engines and parts thereof, namely, cylinder blocks, cylinder heads, crankshafts, flywheels, connecting rods, camshafts, fuel pumps, fuel filters, air cleaners, air silencers, oil pumps, oil filters, water pumps and fans for use in land vehicles, namely trucks and buses. FIRST USE: 19720000. FIRST USE IN COMMERCE: 19720000 |
|  | 6067717<br><br>6/2/2020 | IC 016: pens, manuals and brochures in the field of operation and maintenance of engines, and catalogs in the field of replacement parts for engines. FIRST USE: 20120101. FIRST USE IN COMMERCE: 20120101<br><br>IC 025: clothing, namely, hats, jackets, shirts, T-shirts, sweatshirts, jackets, and belts. FIRST USE: 20120101. FIRST USE IN COMMERCE: 20120101 |

| | | |
|---|---|---|
|  | 6067719<br><br>6/2/2020 | IC 025: clothing, namely, hats, jackets, shirts, T-shirts, sweatshirts, jackets, and belts. FIRST USE: 20120101. FIRST USE IN COMMERCE: 20120101 |
|  | 4934861<br><br>4/12/16 | IC 007: Engine exhaust systems for trucks and buses, comprising pipes, selective catalytic reduction (SCR) units, collectors, clamps, diesel particulate filter (DPF) units; engine exhaust aftertreatment systems for trucks and buses, comprising pipes, collectors, selective catalyst reduction (SCR) units, catalyst tanks, mixing tubes, exhaust fluid injectors, diesel oxidation catalyst (DOC) units, diesel particulate filters (DPF); filters for trucks and buses, namely, fuel filters, air cleaners, oil filters; parts of internal combustion engines, hybrid engines, fuel cell powered engines, and electric motors for trucks and buses, namely, cylinder blocks, cylinder heads, crankshafts, flywheels, connecting rods, camshafts, fuel pumps, water pumps and fans, oil pumps, and radiators. FIRST USE: 20110301. FIRST USE IN COMMERCE: 20110301<br><br>IC 012: Internal combustion engines, hybrid engines, fuel cell powered engines, electric motors, transmissions and parts thereof, axles and axles assemblies, all for land vehicles. FIRST USE: 20110301. FIRST USE IN COMMERCE: 20110301 |

37.    Plaintiffs also own common law trademarks, under Oregon law and other states' laws, in their respective DTNA™ and Daimler Trucks N.A.™, Freightliner™, Western Star™, Alliance™, Thomas Built™, and Detroit™ marks and brands.

38.    Plaintiffs' registered trademarks include marks registered for clothing and other products of the type Defendants offer for sale on their website using those marks, such as:

a)  the FREIGHTLINER® trademark, reg. no. 1165403, for goods including "Clothing-Namely, Hats, Gloves, Jackets, Shirts, T-Shirts," and pens, clocks, and flashlights;

b)  the WESTERN STAR® trademark, reg. no. 3632403, for "clothing, namely, T-shirts, shirts, jackets, hats"; and

c)  the DETROIT trademark logos, reg. nos. 6067717 and 6067719, for goods including "clothing, namely, hats, jackets, shirts, T-shirts, sweatshirts, jackets, and belts," and pens.

True copies of certified copies of those registrations are attached as Exhibit 9 hereto.

## DEFENDANT'S COUNTERFEITING AND INFRINGEMENT OF PLAINTIFFS' TRADEMARKS

39.    Starting on December 19, 2021, Defendant's website at issue falsely stated and suggested that Defendants are affiliated with Plaintiffs and their website was authorized by Plaintiffs to use Plaintiffs' brands and trademarks to sell products marked with those trademarks.

40.    The URL for Defendants' primary website at issue includes the term "daimlertrucksna," implying an affiliation with Plaintiff DTNA: https://daimlertrucksna.brandingmerchandise.com/. Defendants' second URL primarily at issue, www.shopdtna.com, also implies an affiliation with DTNA, and through at least mid-October,

2023, redirected to Defendants' infringing site at https://daimlertrucksna.brandingmerchandise.com/.

41.    Defendants' website falsely stated through at least mid-October, 2023, that it was DTNA's site, "*Welcome to Daimler Trucks North America (DTNA) merchandise site!*"

42.    Defendants' website stated through at least mid-October, 2023, that B&E Brooks has an affiliation with or ownership of Plaintiffs' brands: "Feel free to browse and purchase any merchandise featuring our world-class brands: Daimler (DTNA), Freightliner, Western Star, Thomas Built Bus and Detroit."

43.    Defendants' website falsely stated through at least mid-October, 2023, that Defendants have a "Proud Relationship" with "Daimler Trucks N.A.," even though that :

**Proud Relationships:**

* NYPD

* Daimler Trucks N.A.

http://shop.brandingmerchandise.com/about.htm (captured 3/15/2022).

44.    Sample unauthorized use of DTNA's FREIGHTLINER Marks and ALLIANCE Marks on Defendants' website are shown below (captured 3/15/2022 at https://daimlertrucksna.brandingmerchandise.com/index.php):



45.    Sample unauthorized use of DTNAs WESTERN STAR Marks and ALLIANCE Marks on Defendants' website are shown below (captured 3/15/2022 at https://daimlertrucksna.brandingmerchandise.com/index.php):



46.    Sample unauthorized use of DTNA's ALLIANCE Marks on Defendants' website

are shown below (captured 3/15/2022 at

https://daimlertrucksna.brandingmerchandise.com/index.php):



47.    Sample unauthorized use of Thomas Built Buses' Marks on Defendant's website

are shown below (captured 4/1/2022 at https://daimlertrucksna.brandingmerchandise.com/):



48.    Sample unauthorized uses of Detroit's Marks on Defendant's website are shown

below (captured 4/1/2022 at https://daimlertrucksna.brandingmerchandise.com/):

COMPLAINT FOR TRADEMARK INFRINGEMENT AND COUNTERFEITING,
UNFAIR COMPETITION, BREACH OF CONTRACT AND DECLARATORY RELIEF    35



49.    Defendant's website at issue included a list of "Categories" that lists Plaintiffs' brands, https://daimlertrucksna.brandingmerchandise.com/:



50.    When a category listed above is selected on Defendants' website, the website retrieves a webpage that offers for sale products with Plaintiffs' brands, such as the following top portions of pages at https://daimlertrucksna.brandingmerchandise.com/index.php/category/7955-detroit-diesel   and   https://daimlertrucksna.brandingmerchandise.com/index.php/category/7931-freightliner:

COMPLAINT FOR TRADEMARK INFRINGEMENT AND COUNTERFEITING,
UNFAIR COMPETITION, BREACH OF CONTRACT AND DECLARATORY RELIEF    36





51.    Defendants' website offered for sale goods that include types specifically identified in Plaintiff DTNA's trademark registrations for the FREIGHTLINER® trademark, reg. no. 1165403, for goods including Hats, Jackets, Shirts, T-Shirts, pens and flashlights; and the WESTERN STAR® trademark, reg. no. 3632403, for goods including T-shirts, shirts, jackets, and hats; and goods of the type specifically identified in Plaintiff Detroit's DETROIT trademark logos, reg. nos. 6067717 for this logo,



for goods including hats, jackets, shirts, and T-shirts, as shown in the following product pages captured on 10/5/2023 (and using the zoom feature on Defendants' website that produces a clearer image of the product):

Top of page at https://daimlertrucksna.brandingmerchandise.com/index.php/category/11303-freightliner-apparel-mens



Using zoom feature:









https://daimlertrucksna.brandingmerchandise.com/index.php/category/8219-new-category-8089



Using zoom feature:





https://daimlertrucksna.brandingmerchandise.com/index.php/category/8046-freightliner-gift-event



Using zoom feature:





https://daimlertrucksna.brandingmerchandise.com/index.php/category/11307-western-star-apparel-womens

COMPLAINT FOR TRADEMARK INFRINGEMENT AND COUNTERFEITING,
UNFAIR COMPETITION, BREACH OF CONTRACT AND DECLARATORY RELIEF     47



Using zoom feature:









https://daimlertrucksna.brandingmerchandise.com/index.php/category/9358-new-category-9358



Using zoom feature:





https://daimlertrucksna.brandingmerchandise.com/index.php/category/11299-detroit-diesel-apparel-mens



Using zoom feature:







https://daimlertrucksna.brandingmerchandise.com/index.php/category/8056-detroit-diesel-headwear



Using zoom:



52.     Defendants' unauthorized use of Plaintiffs' trademarks on their website and on

products offered for sale and sold on their website, and false statements on their website claiming

an association with or ownership of Plaintiffs' trademarks and brands, gives the false impression that Defendants' website and goods are authorized by, associated with, and sponsored by Plaintiffs.

53.    Defendants' unauthorized use of Plaintiffs' trademarks, and false advertising, causes and is likely to cause confusion, and is damaging Plaintiffs and their goodwill in their trademarks, in violation of 15 U.S.C. §§ 1114-1118, and is unfair competition under 15 U.S.C. § 1125.

54.    Plaintiffs seek an injunction prohibiting Defendants from using Plaintiffs' Marks, related marks, logos and branding elements, and company name in association with their business, goods and services.  Defendants' use of the mark is causing, and is likely to cause, confusion with Plaintiffs' Marks; infringes Plaintiffs' Marks; is damaging Plaintiffs; and will continue to cause damage to Plaintiffs until enjoined, including irreparable damage to Plaintiffs' goodwill. Defendants should be enjoined from using Plaintiffs' Marks, related marks, logos and branding elements, and Plaintiffs' company names, in association with its business.

55.    Plaintiffs seek damages and other appropriate relief.

56.    After December 19, 2021, Defendant B&E Brooks ordered and obtained goods that included on it the Freightliner trademark in reg. no. 1165403 (the "Freightliner Counterfeit Goods").

57.    After December 19, 2021, B&E Brooks offered for sale and/or sold the Freightliner Counterfeit Goods.

58.    After December 19, 2021, B&E Brooks offered for sale and/or sold the Freightliner Counterfeit Goods including clothing.

59.    After December 19, 2021, B&E Brooks offered for sale and/or sold the Freightliner Counterfeit Goods including hats.

60.     After December 19, 2021, B&E Brooks offered for sale and/or sold the Freightliner Counterfeit Goods including jackets.

61.     After December 19, 2021, B&E Brooks offered for sale and/or sold the Freightliner Counterfeit Goods including shirts.

62.     After December 19, 2021, B&E Brooks offered for sale and/or sold the Freightliner Counterfeit Goods including t-shirts.

63.     After December 19, 2021, B&E Brooks offered for sale and/or sold the Freightliner Counterfeit Goods including pens.

64.     After December 19, 2021, B&E Brooks offered for sale and/or sold the Freightliner Counterfeit Goods including flashlights.

65.     After December 19, 2021, B&E Brooks ordered and obtained goods that included on it the Western Star trademark in reg. no. 3632403 (the "Western Star Counterfeit Goods").

66.     After December 19, 2021, B&E Brooks offered for sale and/or sold the Western Star Counterfeit Goods.

67.     After December 19, 2021, B&E Brooks offered for sale and/or sold the Western Star Counterfeit Goods including clothing.

68.     After December 19, 2021, B&E Brooks offered for sale and/or sold the Western Star Counterfeit Goods including t-shirts.

69.     After December 19, 2021, B&E Brooks offered for sale and/or sold the Western Star Counterfeit Goods including shirts.

70.     After December 19, 2021, B&E Brooks offered for sale and/or sold the Western Star Counterfeit Goods including jackets.

71.    After December 19, 2021, B&E Brooks offered for sale and/or sold the Western Star Counterfeit Goods including hats.

72.    After December 19, 2021, Defendant B&E Brooks ordered and obtained goods that included on it the Detroit trademark in reg. nos. 6067717 and 6067719 (the "Detroit Counterfeit Goods").

73.    After December 19, 2021, B&E Brooks offered for sale and/or sold the Detroit Counterfeit Goods including clothing.

74.    After December 19, 2021, B&E Brooks offered for sale and/or sold the Detroit Counterfeit Goods including t-shirts.

75.    After December 19, 2021, B&E Brooks offered for sale and/or sold the Detroit Counterfeit Goods including shirts.

76.    After December 19, 2021, B&E Brooks offered for sale and/or sold the Detroit Counterfeit Goods including jackets.

77.    After December 19, 2021, B&E Brooks offered for sale and/or sold the Detroit Counterfeit Goods including hats.

78.    After December 19, 2021, B&E Brooks offered for sale and/or sold the Detroit Counterfeit Goods including sweatshirts.

79.    After December 19, 2021, B&E Brooks offered for sale and/or sold the Detroit Counterfeit Goods including pens.

80.    Defendant Eric Brooks directed the ordering, offering for sale, and sale of the Freightliner, Western Star and Detroit Counterfeit Goods after December 19, 2021.

81.    Defendant Eric Brooks knew at the time he directed the ordering, offering for sale, and sale of the Freightliner, Western Star and Detroit Counterfeit Goods that he and B&E Brooks were not authorized by Plaintiffs to use those trademarks.

82.    Defendant Eric Brooks had been specifically told by DTNA on or about November 19, 2021, to not use their trademarks on any goods ordered after December 19, 2021.

83.    Defendant Eric Brooks had been specifically told by DTNA, before and after November 19, 2021, to not sell any goods using any of plaintiffs' trademarks after December 19, 2021.

84.    Defendants offering for sale and sale of the Freightliner, Western Star and Detroit Counterfeit Goods after December 19, 2021 was willful trademark counterfeiting.

## **CLAIM ONE**

## **FEDERAL TRADEMARK INFRINGEMENT BY B&E BROOKS AND ERIC BROOKS**

85.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

86.    Defendants' acts constitute trademark infringement in violation of 15 U.S.C. § 1114(1).

87.    FREIGHTLINER, WESTERN STAR, ALLIANCE, THOMAS BUILT BUSES, DETROIT DIESEL, and DETROIT marks (collectively, "Plaintiffs' Registered Marks") are valid, federally registered trademarks owned by Plaintiffs.

88.    The registration of Plaintiffs' Registered Marks on the Principal Register constitutes prima facie evidence of the validity of the marks, as well as Plaintiff's ownership and exclusive rights to use the marks in commerce, pursuant to 15 U.S.C. § 1115.

89.     Defendants have used and continue to use, without Plaintiffs' authorization, Plaintiffs' Registered Marks on and in connection with goods which are identical to the goods listed in Plaintiffs' Federal Registrations for Plaintiffs' Registered Marks.

90.     Defendants offered for sale, without permission from Plaintiffs, goods bearing Plaintiffs' Registered Marks.

91.     Defendants' use of Plaintiffs' Registered Marks is causing, and likely to cause, confusion between Plaintiffs and Defendants, and the source of origin of their goods and services, in the minds of consumers and others.  It is likely to cause consumers and others to confuse Defendants and their goods and services for Plaintiffs and their goods and services.

92.     Defendants' use of Plaintiffs' Registered Marks has caused, and will cause, irreparable damage to Plaintiffs, including by causing actual confusion that interrupts Plaintiffs' business and diminishes the Plaintiffs' goodwill in Plaintiffs' Registered Marks.

93.     Plaintiffs notified Defendants on November 19, 2021, that they were terminating their relationship with Defendant Brooks, effective December 19, 2021, that Defendants were no longer was authorized to order inventory with Plaintiffs' brands, and they were to "sunset" by December 13, 2021, their website advertising and selling goods using Plaintiffs' brands. Defendants were notified on December 15, 2021, January 19 and February 11, 2022, and periodically from then to the present, including most recently on October 20, 2023, to cease and desist use of Plaintiffs' registered Freightliner®, Western Star®, Alliance® and other related common law marks, brands and logos. Defendants simply refuse to stop using Plaintiffs' trademarks and brands, and refuse to stop selling, and offering for sale, goods marked with Plaintiffs' trademarks and brands, and refuse to provide written assurance that they will not reactivate their infringing website.

94.    Despite Defendants' knowledge of Plaintiffs' demand that it cease and desist use of Plaintiffs' Registered Marks and common law marks and brands, Defendants continued to use Plaintiffs' Registered Marks, common law marks and brands on their website through at least October 2023, and on clothing and other goods offered for sale and sold on its website, in U.S. commerce.

95.    Defendants continued use of Plaintiffs' Registered Marks, common law marks and brands is causing, and is likely to cause further, damage to Plaintiffs' goodwill in Plaintiffs' Registered Marks, common law marks and brands, business interruption, and costs associated with the need for corrective advertising.

96.    Defendants continued use of Plaintiffs' Registered Marks, common law marks and brands despite its awareness of Plaintiffs' federal registrations and longtime use, Plaintiffs' demand that it cease and desist such use, and that such use is causing, and is intended to cause, confusion, is extraordinary.

97.    Defendants' acts of trademark infringement were and are willful.

98.    Defendants' acts of trademark infringement, unless enjoined, are likely to continue to cause irreparable harm to Plaintiffs.

## CLAIM TWO

## TRADEMARK COUNTERFEITING BY B&E BROOKS AND ERIC BROOKS

99.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

100.    Defendants' acts constitute trademark counterfeiting in violation of 15 U.S.C. § 1114(1) and 1116(d).

101.    Plaintiffs' Registered Marks are valid, federally registered trademarks owned by Plaintiffs.

102.    The registration of Plaintiffs' Registered Marks on the Principal Register constitutes prima facie evidence of the validity of the marks, as well as Plaintiff's ownership and exclusive rights to use the marks in commerce, pursuant to 15 U.S.C. § 1115.

103.    Defendants have used and continue to use, without Plaintiffs' authorization, marks that are identical to or indistinguishable from Plaintiffs' Registered Marks on Defendants' website and on and in connection with goods which are identical to the goods listed in Plaintiffs' Federal Registrations for Plaintiffs' Registered Marks.

104.    Defendants have used marks that are identical to or indistinguishable from Plaintiffs' Registered Marks knowing that they are counterfeit in connection with the advertisement, promotion, offer for sale, sale, and distribution of goods identical to the goods listed in Plaintiffs' Federal Registrations for Plaintiffs' Registered Marks.

105.    Defendants' use of Plaintiffs' Registered Marks is causing, and likely to cause, confusion between Plaintiffs and Defendants, and the source of origin of their goods and services, in the minds of consumers and others.  It is likely to cause consumers and others to confuse Defendants and their goods and services for Plaintiffs and their goods and services.

106.    Defendants' use of Plaintiffs' Registered Marks has caused, and will cause, irreparable damage to Plaintiffs, including by causing actual confusion that interrupts Plaintiffs' business and diminishes the Plaintiffs' goodwill in Plaintiffs' Registered Marks.

107.    Plaintiffs notified Defendants on November 19, 2021, that they were terminating their relationship with Defendant Brooks, that Defendants were no longer was authorized to order inventory with Plaintiffs' brands, and they were to "sunset" by December 13, 2021, their website

advertising and selling goods using Plaintiffs' brands. Defendants were repeatedly told to cease and desist use of Plaintiffs' registered Freightliner®, Western Star®, Alliance® and other related common law marks, brands and logos. Defendants simply refused to stop using Plaintiffs' trademarks and brands without authorization from December 19, 2021 through at least October 2023.

108.    Despite Defendants' knowledge of Plaintiffs' demand that it cease and desist use of Plaintiffs' Registered Marks and common law marks and brands, Defendants continued to use Plaintiffs' Registered Marks common law marks and brands on their website, and on clothing and other goods offered for sale and sold on its website, in U.S. commerce.

109.    Defendants continued use of Plaintiffs' Registered Marks, common law marks and brands is causing, and is likely to cause further, damage to Plaintiffs' goodwill in Plaintiffs' Registered Marks, common law marks and brands, business interruption, and costs associated with the need for corrective advertising.

110.    Defendants continued use of Plaintiffs' Registered Marks, common law marks and brands despite its awareness of Plaintiffs' federal registrations and longtime use, Plaintiffs' demand that it cease and desist such use, and that such use is causing, and is intended to cause, confusion, is extraordinary.

111.    Defendants' acts of trademark counterfeiting were and are willful.

112.    Defendants' are liable for up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed.

113.    Defendants' acts of trademark counterfeiting, unless enjoined, are likely to continue to cause irreparable harm to Plaintiffs.

## CLAIM THREE

## FEDERAL UNFAIR COMPETITION BY B&E BROOKS AND ERIC BROOKS

114.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

115.    Federal Law at 15 U.S.C. § 1125(a) provides that one who uses in commerce, in connection with any goods or services, "any word, … symbol, … or any combination thereof…, which— (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person … shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

116.    Defendants' use of Plaintiffs' Registered Marks and Plaintiffs' common law marks, in combination with its use of Plaintiffs' related marks, logos and branding elements and Plaintiffs' company names, and false advertising on Defendants' site claiming an affiliation with Plaintiffs and their brands, is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, and as to the origin, sponsorship or approval of Defendants' goods, services and commercial activities, and has caused and is likely to continue to cause irreparable damage to Plaintiffs as alleged above. It is causing, and is likely to continue to cause, consumers and others to believe that Defendants' website, and goods offered for sale and sold on their website, at https://daimlertrucksna.brandingmerchandise.com/index.php, originate with, are sponsored by, are approved, and/or are associated with Plaintiffs.

117.    Defendants' actions alleged above despite its awareness of Plaintiffs' federal registrations and Plaintiffs' goodwill in those registrations and related common law marks, logos,

branding elements, and company names, and despite awareness that it is causing and is intended to cause confusion, is extraordinary.

## CLAIM FOUR

**BREACH OF CONTRACT BY BROOKS AND
DECLARATION OF OBLIGATIONS ON TERMINATION OF RELATIONSHIP**

118.   Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

119.   Defendant Brooks has inventory of products labelled with Plaintiffs' Registered Marks, and with Plaintiffs' related unregistered trademarks, logos, and company names.

120.   Defendant Brooks is obligated by contract to deliver that inventory to Plaintiffs. Defendant Brooks has not done so.

121.   Defendant Brooks is obligated by contract to shut down its website pages that advertise using, and that offer for sale goods branded with, Plaintiffs' Registered Marks and related unregistered trademarks, logos, brands and company names, and that make false statements implying or stating an affiliation with Plaintiffs and their brands and Registered Marks.  Defendant Brooks has not done so.

122.   Plaintiff DTNA repeatedly offered to pay for inventory in Defendant Brooks' possession that existed prior to November 19, 2021 (when Plaintiff DTNA terminated Plaintiffs' business relationship with Defendant Brooks), if Defendant Brooks would deliver it to Plaintiff DTNA at its headquarters in Portland, Oregon with an invoice and itemization, subject to an inspection and valuation of the inventory and limited by the contractual maximum inventory value authorized in the parties' contracts.  Defendant Brooks has repeatedly refused to do that.

123.   Defendant Brooks has breached his contracts with Plaintiffs, including his obligation of good faith and fair dealing, by the misconduct towards Plaintiffs alleged herein,

including willful misuse of Plaintiff's Registered Marks, refusal to take down his website that misuses those marks, sale and offering for sale of counterfeit goods falsely branded with Plaintiffs' Registered Marks, false statements relating to Plaintiffs on that website, refusal to return inventory branded with Plaintiffs' Registered Marks and related brands and company names, efforts to misappropriate Plaintiffs' valuable Registered Marks and related brands and their associated goodwill, deception of customers by stating and implying that Brooks continues to be authorized by Plaintiffs to sell goods with their brands and Registered Marks, and invoices seeking exorbitant post-termination fees.

124.    Plaintiffs seek a declaration, pursuant to 28 U.S.C. § 2201, that Defendant Brooks must deliver to Plaintiffs all inventory in its possession branded with Plaintiffs Registered Marks and related unregistered trademarks, logos, and company names.

125.    Plaintiffs' seek a declaration, pursuant to 28 U.S.C. § 2201, of the amounts, if any, they owe Defendant Brooks upon Defendant's delivery to Plaintiffs of all inventory in its possession branded with Plaintiffs Registered Marks and related unregistered trademarks, logos, and company names, including a declaration as to whether Defendant Brooks has waived and forfeited his right to compensation for the inventory by delaying its return, causing its value to Plaintiffs to decrease, and by breaching Defendant Brooks' contract with Plaintiffs.

126.    Plaintiffs seek a declaration, pursuant to 28 U.S.C. § 2201, resolving any other disputes Defendant Brooks may raise regarding the termination of that relationship.

127.    Plaintiffs seek damages for Defendant Brook's breach of contract in an amount to be determined at trial.

128.    The 2019 Master Purchasing Agreement governing the parties' business relationship provides at section 15.3 for an award of attorney fees and expenses to the prevailing

party if legal action is necessary to enforce it. Plaintiffs seek their attorney fees and expenses incurred in this action pursuant to that Agreement.

129.    To remedy Defendant Brooks' breach of contract, Plaintiffs seek an order compelling Defendant Brooks to deliver to Plaintiffs all inventory in its possession branded with Plaintiffs Registered Marks and related unregistered trademarks, logos, and company names.

## **INJUNCTION**

130.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

131.    Defendants' use of Plaintiffs' Registered Marks, common law marks and related brands and company names on their website and on goods offered for sale and sold, and Defendants' false advertising related to Plaintiffs on their website, in violation of U.S. trademark common law, sections 1117 and 1125(c)(1) of the Lanham Act, and the parties' contract, is causing Plaintiffs irreparable harm. Defendants should be preliminarily and permanently enjoined from all unauthorized use of Plaintiffs' Registered Marks, common law marks and related brands and company names on any website and goods, and should be enjoined from falsely advertising or stating that Defendants have a current relationship with Plaintiffs, and should be ordered to close down their website alleged herein.

132.    Plaintiffs' Registered Freightliner Marks and other Marks are famous and distinctive in the state of Oregon and Plaintiffs are therefore entitled to an injunction pursuant to ORS 647.017. Defendants' use of Plaintiffs' Registered Marks began after Plaintiffs' Registered Marks became famous and Defendants' continued use is likely to cause dilution of the famous marks.

COMPLAINT FOR TRADEMARK INFRINGEMENT AND COUNTERFEITING, UNFAIR COMPETITION, BREACH OF CONTRACT AND DECLARATORY RELIEF    71

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.      Defendant Brooks be held liable under each claim set forth in this Complaint, and Defendant Eric Brooks be held liable for trademark infringement, counterfeiting, and unfair competition.

B.      A judgment declaring that Defendants must deliver to Plaintiffs all inventory in their possession branded with Plaintiffs' Registered Marks and related common law trademarks, logos, and company names; declaring the amounts, if any, Plaintiffs owe Defendant Brooks upon Defendants' delivery to Plaintiffs of that inventory; confirming that Plaintiffs' business relationship with Defendant Brooks is terminated; and resolving any other disputes Defendant Brooks may raise regarding the termination of that relationship;

C.      A judgment ordering Defendants to deliver to Plaintiffs, at a location and time specified by or agreeable to Plaintiffs, all inventory in their possession branded with Plaintiffs' Registered Marks, common law marks and related brands, logos, and company names, or alternatively, ordering Defendants to destroy such inventory and provide confirmation thereof;

D.      A judgment finding Defendants' trademark infringement exceptional;

E.      A judgment finding Defendants' trademark counterfeiting willful;

F.      A permanent injunction against Defendants enjoining them and their agents, servants, employees, attorneys, and all other persons in active concert or participation with them (including subsidiaries and affiliates) from using on any website, on any goods, and in association with any services, Plaintiffs' Registered Marks and Plaintiffs' related common law marks, brands, logos and company names (however spelled or punctuated, whether capitalized or abbreviated, singular or plural, printed of stylized, whether alone or with any other word(s), punctuation or

symbol(s)), and ordering them to deliver to Plaintiffs or, alternatively, to destroy all infringing articles;

G.      An Order as part of the injunction, pursuant to 15 U.S.C. § 1116(a), that Defendants file with the Court and serve on Plaintiffs within 30 days after service on the Defendants of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

H.      An award to Plaintiffs of statutory damages up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, in an amount not less than $6,000,000, or compensatory damages in an amount to be determined at trial, to be paid by Defendants as a result of Defendants' actions, together with interest and costs, including enhanced and treble damages, pursuant to at least 15 U.S.C. § 1117(a)-(d);

I.      An award to Plaintiffs of compensatory damages to be paid by Defendant Brooks as a result of Defendant Brooks' breach of contract;

J.      An award to Plaintiffs of any profits Defendants made in connection with its use of Plaintiffs' Registered Marks and related common law marks, brands, logos and company names, pursuant to 15 U.S.C. 1117 and the equity powers of this Court;

K.      An award to Plaintiffs against Defendants of damages in an amount to be determined at trial to allow Plaintiffs to make corrective advertising;

L.      An award to Plaintiffs against Defendants of Plaintiffs' costs, disbursements, and reasonable attorneys' fees incurred in this action, together with interest, including prejudgment interest, pursuant at least to 15 U.S.C. § 1117(a), the 2019 Master Purchasing Agreement governing the parties' business relationship, the equity powers of this Court, and any other applicable attorney fee provision in the parties' contracts; and

COMPLAINT FOR TRADEMARK INFRINGEMENT AND COUNTERFEITING,
UNFAIR COMPETITION, BREACH OF CONTRACT AND DECLARATORY RELIEF    73

M.      Such other and further relief as may be deemed just and appropriate.

Respectfully submitted,

Dated:  November 17, 2023          By:  *s/Jeffrey S. Love*
_____
Jeffrey S. Love, OSB No. 873987
Email: jeffrey.love@klarquist.com
Joseph T. Jakubek, OSB No. 950326
Email: joseph.jakubek@klarquist.com
Shelby Stepper, OSB No. 191851
Email: shelby.stepper@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
Telephone: 503-595-5300

*Attorneys for Plaintiffs*
*Daimler Truck North America LLC,*
*Thomas Built Buses, Inc., and*
*Detroit Diesel Corporation*